FILED
NOV 24 2009

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

GERALD WILLIAM LILLARD                          CV. 08-6309-PK

        Plaintiff,                                  FINDINGS AND
                                                    RECOMMENDATION

v.

MICHAEL J. ASTRUE, Commissioner
of Social Security,

        Defendant.
_____

PAPAK, Magistrate Judge:

       Plaintiff Gerald Lillard challenges the Commissioner's decision denying his application for Supplemental Security Income (SSI) benefits under Title XVI of the Social Security Act. The court has jurisdiction under 42 U.S.C. § 405(g). The Commissioner's decision should be reversed and remanded for further proceedings, for the reasons set forth below.

## BACKGROUND

       Gerald Lillard was born in 1968. (Tr., #12, at 124.) He obtained a high school equivalency diploma and has received training in construction and carpentry. *Id.* at 26. Lillard's

Page 1 - FINDINGS AND RECOMMENDATION

work history for the past fifteen years consists of jobs in construction and carpentry. *Id.* at 27. He last worked in early 2006. *Id.* at 28.

Lillard first contacted the Social Security Administration regarding his application for SSI in January 2006. *Id.* at 21. After the Commissioner of Social Security denied his application initially and upon reconsideration, Lillard requested a hearing before an administrative law judge (ALJ). *Id.* at 103. The ALJ held a hearing on February 14, 2008 and took testimony from Lillard, who was represented by an attorney, and from a vocational expert. *Id.* at 19-87. In July 2008, the ALJ issued a decision finding Lillard not disabled because he could perform the requirements of representative occupations such as a parking lot cashier or eyeglass inspector. *Id.* at 17-18.

The ALJ applied the five-step sequential disability determination process set forth in 20 C.F.R. § 404.1520. *Id.* at 10-17. At step one, the ALJ found that Lillard had not engaged in substantial gainful activity since January 12, 2006, the date of his application. *Id.* at 10. At step two, the ALJ found that Lillard suffered from the following severe impairments: bipolar disorder, degenerative joint disease of the left knee, degenerative disc disease of the cervical spine, and attention hyperactivity disorder. *Id.* At step three, the ALJ found that Lillard's impairments, or a combination of those impairments, did not meet or medically equal a listed impairment. *Id.* At step four, the ALJ found that Lillard was not able to perform his past relevant work. *Id.* at 16. The ALJ concluded at step five, however, that Lillard could perform other jobs that exist in significant numbers, and accordingly concluded that he was not disabled. *Id.* at 17-18. Lillard filed this appeal.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g); *Bray v. Comm'r Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Vasquez v. Astrue*, 547 F.3d 1101, 1104 (9th Cir. 2008) (citation omitted). The court must weigh all of the evidence, whether it supports or detracts from the Commissioner's decision. *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986). If evidence supports more than one rational interpretation, the court upholds the Commissioner's decision. *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008). A reviewing court, however, "cannot affirm the decision of an agency on a ground that the agency did not invoke in making its decision." *Stout v. Comm'r Soc. Sec. Admin.*, 454 F.3d 1050, 1054 (9th Cir. 2006) (citation omitted). "Finally, the court will not reverse an ALJ's decision for harmless error, which exists when it is clear from the record that the ALJ's error was inconsequential to the ultimate nondisability determination." *Tommasetti*, 533 F.3d at 1038 (citation omitted).

## DISCUSSION

Lillard contends the ALJ erred in several respects. Specifically, Lillard argues that the ALJ improperly rejected his testimony regarding the severity of his symptoms. Lillard further asserts that the ALJ improperly discounted the opinion of his treating and examining physicians and failed to account for lay witness testimony concerning the severity of his symptoms. Finally, Lillard argues that the ALJ erred at step five because the hypothetical to the vocational expert

improperly excluded the limitations identified in his testimony, by his physicians and in the lay witness testimony.

## I.  Claimant Credibility

Once a claimant produces medical evidence of an underlying impairment, an ALJ may not reject the claimant's subjective complaints based solely on a lack of medical evidence to fully corroborate the alleged severity of pain. *Robbins v. Soc. Sec. Admin.* 466 F.3d 880, 883 (9th Cir. 2006). Unless the record has affirmative evidence of malingering, the ALJ can reject the claimant's testimony about the severity of symptoms only by offering specific, clear and convincing reasons for doing so. *Carmickle v. Comm'r Soc. Sec. Admin.*, 533 F.3d 1155, 1160 (9th Cir. 2008). The ALJ must state specifically the facts in the record that lead to his conclusion. *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001).

Here, the ALJ found that Lillard produced objective medical evidence of his impairments. (Tr. 10) In addition, the record does not contain affirmative evidence that Lillard is malingering. Thus, the ALJ opinion must set forth "clear and convincing" reasons to reject Lillard's testimony. Lillard argues that the ALJ's rejection of his testimony did not meet that standard.

### A.  Knee Symptom Testimony

Although Lillard argues that the ALJ improperly rejected his testimony that his knee pain requires ice or elevation half of the day, the record suggests that the ALJ did not disregard that testimony. Lillard testified that his knee pain was constant and that he applied ice to his knee half the day. Tr. at 56-57, 160. He further testified that he sat with his knee elevated at eye level or wrapped half of the day. *Id.* at 59. The vocational expert testified that Lillard could not perform competitively as a parking lot attendant or lens inspector if he needed to elevate his leg,

but he could apply an ice wrap on the job. *Id.* at 76, 78, 82, 83. Thus, because Lillard testified that could get by with his leg wrapped half of the day, the ALJ did not necessarily disregard Lillard's pain testimony when he found that Lillard could perform those jobs.

The ALJ, however, found that Lillard could stand or walk two hours in an eight hour work day and thus rejected Lillard's testimony that he cannot walk or move quickly due to his knee pain. (Tr. 11, 140, 159-160.) The ALJ cited Lillard's lack of consistent treatment and the opinion of the examining physician, Dr. Brewster, as the reason for his decision not to fully credit Lillard's pain testimony. Lillard claims that the ALJ improperly relied on a lack of treatment when Lillard, in fact, could not afford treatment. He also argues that the ALJ failed to consider that symptoms may vary in their intensity and functional effects.

### 1. Frequency and Nature of Treatment

If a claimant complains about disabling pain but fails to seek treatment, an ALJ may consider that failure as a basis for finding the complaint unjustified or exaggerated. *Orn v. Astrue,* 495 F.3d 625, 638 (9th Cir. 2007). Failure to seek relief from pain is probative of credibility because "a person's normal reaction is to seek relief from pain, and because modern medicine is often successful in providing some relief." *Id.*; *see also Burch v. Barnhart,* 400 F.3d 676 (9th Cir. 2005) (ALJ properly discredited the claimant's back pain testimony when claimant did not have any treatment for three months and the existing treatment did not include surgery, chiropractic care or physical therapy). If, however, the claimant provides evidence of a good reason for failing to seek treatment, the ALJ cannot reject the claimant's symptom testimony on that ground. *Smolen v. Chater,* 80 F.3d 1273, 1284 (9th Cir. 1996) (claimant's failure to take medication was not a clear and convincing reason to reject her testimony where she testified that

Page 5 - FINDINGS AND RECOMMENDATION

she had no insurance and could not afford treatment). Moreover, the ALJ should consider that "[s]ymptoms may vary . . . or may worsen or improve with time, and this may explain why the individual does not always allege the same intensity, persistence, or functional effects of his or her symptoms." SSR No. 96-7p, 1996 SSR LEXIS 4, at *16-17 (1996).[1]

Here, the ALJ did not discount Lillard's testimony because Lillard provided inconsistent descriptions of his knee pain, but instead found that the treatment record suggested that his knee problems waxed and waned. (Tr. at 14.) Lillard, however indicated that he lacked funds or insurance to pay for treatment for his knee pain. *Id.* at 38, 173, 332.

The record demonstrates that Lillard did not seek treatment for his knee for extended periods of time and that, when he did seek treatment, it was due to an incident where he twisted or strained the knee. Lillard had surgery on his knee in 2001 and again in 2002 after another injury. *Id.* at 242. In 2003, he sought treatment for his knee after a work-related injury. *Id.* The record reveals no further treatment for the knee until 2005, when Lillard visited the emergency room for knee pain that began when he was kneeling to jack up a car. *Id.* at 249.

Another two years elapsed before Lillard again sought treatment for his knee pain, and those records, although they show more frequent visits, also suggest that Lillard sought treatment related to a specific injury. From July 2007 until October 2007, Lillard made six visits to Umpqua Community Health Clinic related in part to his knee pain. *Id.* at 361, 365, 366, 368, 369.[2] In addition, Lillard visited the emergency room once in September 2007 to seek treatment

---

1  Courts give "some deference" to Social Security Rulings (SSRs) "as long as they are consistent with the Social Security Act and regulations." *Ukolov v. Barnhart*, 420 F.3d 1002, 1005 n.2 (9th Cir. 2005).

2  A chart note after Lillard's last visit to Umpqua Community Health indicates that Lillard's toxicology screen led his physician to refuse to issue any further prescriptions for narcotics. (Tr. at 361.)

Page 6 - FINDINGS AND RECOMMENDATION

after he twisted his knee. *Id.* at 357. Following his last visit to Umpqua Community Health, Lillard then visited the emergency room three times in October 2007 to seek treatment after he twisted his knee in the shower. *Id.* at 345, 348, 350.

Here, the record as a whole demonstrates that Lillard did not have insurance and did not seek treatment until his symptoms flared up due to an injury of or strain to his knee. Thus, Lillard's finances or his lack of severe symptoms, or a combination of both, may have been the cause of his intermittent treatment. I defer to the ALJ's rational interpretation of the evidence. *Tommasetti*, 533 F.3d at 1038. Although the evidence here is equivocal, it sufficiently supports the ALJ's decision to rely on frequency of treatment to discount Lillard's pain testimony.

### 2. Medical Evidence

Although an ALJ may not reject a claimant's symptom testimony based solely on a lack of medical evidence, an ALJ may consider the medical evidence as one of many factors relevant to determining the severity of the claimant's pain and its disabling effects. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) (citing 20 C.F.R. § 404.1529(c)(2)). Thus, the ALJ may consider the extent to which the record corroborates the claimant's reports of disabling pain. *Id.*

Here, the ALJ properly discounted Lillard's pain testimony because no treating source opinion indicated that Lillard was unable to work in a sedentary capacity. Doctor Hayes, who treated Lillard's knee from 2001 through 2003, indicated in 2003 that Lillard could engage in "limited duty with no prolonged squatting." (Tr. at 241-242.) After Lillard's 2005 emergency room visit, his doctor instructed him to follow up with an orthopedic surgeon but indicated no functional restrictions and noted that he was ambulatory. *Id.* at 252. Moreover, when Lillard sought treatment for degenerative disc disease of the cervical spine after his neck injury, his

Page 7 - FINDINGS AND RECOMMENDATION

physician released him to light duty with no overhead work or lifting above the chest level, but with no restrictions related to sitting, standing or walking. *Id.* at 266. Finally, the doctor who treated Lillard for his last emergency room visit for knee pain in October 2007 discharged Lillard "in good condition" with instructions to follow up with his physician but with no noted physical restrictions. *Id.* at 346. Thus, the ALJ properly relied in part on the medical record to discount Lillard's symptom testimony.

The ALJ also relied on the opinion of the examining physician, Dr. Brewster. *Id.* at 14. Although Lillard does not take issue with that portion of the ALJ's opinion, I note that the ALJ accurately referred to Brewster's conclusion that Lillard could walk or stand two hours in an eight hour work day and had no sitting restrictions. *Id.* at 326. I therefore conclude that ample evidence in the record supported the ALJ's decision to reject portions of Lillard's pain testimony.

### B.  Mental Health Testimony

The ALJ rejected Lillard's testimony that he missed work due to recurring episodes of depression and anxiety every thirty to forty days and lasting for up to seven days. Lillard referred to this symptom several times in his testimony and reports. (Tr. 40, 42-43, 63, 68-69, 79, 289-290.) The ALJ, however, did not include monthly absences in his description of Lillard's residual functional capacity. *Id.* at 11. The ALJ rejected the testimony on the grounds that Lillard had worked successfully in the past despite his longstanding mental health symptoms, Lillard made inconsistent statements regarding the reasons he was unable to work, and the lack of any medical opinion suggesting that Lillard could not sustain regular work. *Id.* at 16. I therefore consider whether the ALJ appropriately relied on those reasons.

1. **Work History**

Social Security regulations provide that employment "during any period" of claimed disability may be probative of a claimant's ability to work. 20 C.F.R. § 404.1571. The ALJ, however, should consider the claimant's ability to maintain employment over a period of time. *See Lingenfelter v. Astrue*, 504 F.3d 1028, 1039 (9th Cir. 2007) (ALJ erred in discounting the claimant's testimony on the basis that the claimant tried to work for nine weeks and failed); *Lester v. Chater*, 81 F.3d 821, 833 (9th Cir. 1995) ("Occasional symptom-free periods - and even the sporadic ability to work - are not inconsistent with disability."); *see also McCorduck v. Astrue*, No. 08-6022, 2009 U.S. Dist. LEXIS 47937, at *13 (D. Or. Feb. 17, 2009) (ALJ erred when he relied in part on the claimant's participation in a sheltered environment work program as a ground to discount her credibility).

Here, although the ALJ discounted Lillard's mental health symptom testimony because Lillard had worked successfully in the past, the record does not indicate whether Lillard could sustain employment. Lillard's earning summary shows no earnings or less than $2000 in earnings for 1983-1990, 1992-1995, 1998-2003 and 2005-2006. (Tr. 134.)

The record does, however, contain several references to Lillard's work activity during years that he had very little or no reported income. Lillard indicated on his disability report that he worked full-time as a concrete carpenter from 1996 until 1999 and testified that he worked full-time on a cash basis for periods of time. *Id.* at 27, 141. He testified that from 1999 until 2001, he worked odd jobs on a cash basis and had someone to help take care of him. *Id.* at 43. In January 2003, he told Dr. Hayes that he had worked the past two or three months, although his total reported income for 2002 and 2003 combined is $2,350. *Id.* at 134, 242. During

Page 9 - FINDINGS AND RECOMMENDATION

emergency room visits in October 2005 and October 2007, he referred to himself as self-employed. *Id.* at 260. In 2006, he received treatment for a work-related injury and the only reported employer for that year, Scenic Builders, denied his claim because he was working for another employer at that time. *Id.* at 132, 265. Moreover, he told an examining physician, Dr. Brewster, that his last job of any duration was from 2004 until 2006, when he worked in the carpenter's union. *Id.* at 274. He told another examining physician, Dr. Villanueva, that his longest job lasted nine months and that his mother and girlfriend helped to support him financially. *Id.* at 290.

Nothing in this admittedly conflicting evidence suggests, however, that Lillard was able to sustain employment over time. Lillard testified that, for two of the three jobs where he had reported income of $9,000 or more, those employers tolerated his absences. *Id.* at 40, 70, 130, 131. Apart from those two jobs, the last time he made significant income from a single employer was 1991. *Id.* at 129. Thus, I conclude that Lillard's work history, taken as a whole, does not support the ALJ's finding that Lillard could successfully sustain regular work.

### 2. Inconsistent Statements

An ALJ may look to a claimant's inconsistent statements concerning symptoms as a ground for finding the claimant not credible. *Tommasetti,* 533 F.3d at 1040 (ALJ credibility finding properly considered that claimant's testimony that his diabetes was not disabling conflicted with his prior claim that it was a disabling condition). Here, the ALJ discounted Lillard's mental health symptom testimony because Lillard indicated that he stopped working due to physical injuries, not mental health symptoms. (Tr. 16.)

The ALJ did not consider the record as a whole when he relied on Lillard's statement that

he was unable to work primarily due to knee pain. While Lillard did report to an examining physician that he stopped working due to his knee problems, he made that statement when his mental health symptoms were improved. *Id.* at 330-331. Moreover, although he also specifically testified that he left two of his most recent jobs due to physical injuries, those jobs both did not last long and therefore may not have been affected by his mental health problems. *Id.* at 29, 39, 140. In addition, Lillard also indicated that he was able to work for periods of time until his mental health symptoms led to absences. *Id.* at 27, 40-41, 42, 63, 68, 289. Thus, Lillard's statement that injuries led him to leave jobs is not inconsistent with Lillard's testimony that his mental health symptoms prevented him from sustaining long-term employment. Accordingly, the ALJ improperly relied on Lillard's statement attributing his unemployment to knee pain when he discounted Lillard's mental health symptom testimony.

### 3. Medical Evidence

The ALJ discounted Lillard's mental health symptom testimony because no treating or examining source opinion found that Lillard was unable to sustain regular work. (Tr. 16.) Those treating and examining sources, however, offered no opinion whatsoever regarding whether Lillard was able to sustain employment. *Id.* at 244-246, 289-294, 329-333, 365-369, 382-384. Rather, the medical records reflect that Lillard's symptoms varied, *id.*, and thus partially corroborate Lillard's testimony.

### C. Summary

The record supports the ALJ's finding with regard to Lillard's knee symptom testimony but fails to support the ALJ's reasoning with regard to Lillard's mental health symptom testimony. I therefore conclude that the ALJ erred when he discounted Lillard's mental health

Page 11 - FINDINGS AND RECOMMENDATION

symptom testimony.

## II. Physician Opinions

The ALJ must consider a physician's clinical findings and interpretation of test results along with the physician's subjective judgments. *Lester*, 81 F.3d at 833. Several factors determine the weight the ALJ should give to a physician opinion, including the length of the treatment relationship and frequency of examination, the amount of evidence that supports the opinion, the consistency of the medical opinion with the record as a whole and the physician's area of specialty. *Orn*, 495 F.3d at 631 (citing 20 C.F.R. § 404.1527(d)). An ALJ, however, may reject a treating or examining physician's uncontradicted medical opinion based on "clear and convincing reasons" supported by substantial evidence in the record. *Carmickle*, 533 F.3d at 1164 (citation omitted). If other evidence in the record contradicts the opinion, the ALJ may reject the opinion only by providing specific and legitimate reasons that are supported by substantial evidence. *Id.*

Here, Lillard argues that ALJ failed to give proper consideration to the limitations identified by his treating and examining physicians. Specifically, Lillard argues that the ALJ did not consider the assessment of his treating physician, Dr. Bogart, that he had a Global Assessment of Functioning (GAF) score of 40.[3] Lillard also argues that the ALJ did not fully

---

[3] "Clinicians use a GAF to rate the psychological, social, and occupational functioning of a patient." *Morgan v. Comm'r Soc. Sec. Admin.*, 169 F.3d 595, 598 n.1 (9th Cir. 1999). The clinician considers "psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness" and assigns a score on a scale of zero to 100. *Dubie v. Astrue*, No. 07-3055, 2008 U.S. Dist. LEXIS 100908, at * 13-14 n.4 (D. Or. Dec. 9, 2008) (citing American Psychiatric Ass'n, Diagnostic & Statistical Manual of Mental Disorders, 32 (4th ed. 2000)). "A GAF of forty indicates some impairment in reality testing or communication, or major impairment in several areas such as work or school, family relations, judgment, thinking, or mood." *Bayliss v. Barnhart*, 427 F.3d 1211, 1217 n.3 (9th Cir. 2005) (citation omitted); *see also Morgan*, 169 F.3d at 598 n.1 ("A GAF between 41 and 50 indicates serious symptoms (e.g. suicidal ideation, severe obsessional rituals, frequent

account for the observations by Dr. Bogart and Dr. Villanueva, an examining physician, that he had difficulty staying focused. Finally, Lillard argues that the ALJ failed to consider that his mental health symptoms are cyclical.

The Commissioner argues that the ALJ adequately captured the assessments by Dr. Villanueva and Dr. Bogart. The doctors' assessments contain clinical findings and observations that the ALJ could look to in determining Lillard's functional limitations. *See, e.g., Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 241 (6th Cir. 2002) (noting that a GAF score may help the ALJ in formulating the residual functional capacity determination); *see also Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1174 (9th Cir. 2008) (ALJ properly found the claimant could perform "simple tasks" where the reviewing psychologist recommended that restriction and the medical evidence showed the claimant could carry out simple instructions, maintain concentration and sustain a routine). Neither Dr. Villanueva nor Dr. Bogart, however, made a specific finding regarding absences or Lillard's ability to sustain employment over time. The lack of specific findings does not mean that the AJL adequately accounted for the opinions of Dr. Bogart and Dr. Villanueva, but instead renders the record inadequate to assess the functional impact of Lillard's mental impairments.

The lack of any treating or examining physician medical opinion regarding Lillard's ability to sustain employment is troubling in light of the fact that the medical evidence shows that Lillard's symptoms fluctuated. Doctor Bogart indicated in March 2003 that Lillard's Beck Depression Rating Scale was severe and an ADHD-attentional scale was "near maximum," but two months later indicated that Lillard was "much improved, in near complete remission." *Id.* at

---

shoplifting) or any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job).").

Page 13 - FINDINGS AND RECOMMENDATION

245-246. Similarly, Dr. Villanueva's December 2006 examination of Lillard found that he had difficulty with attention to detail and organizing his thoughts but two years later found he was "much improved." *Id.* at 294, 333. Moreover, Dr. Tabert, who treated Lillard at Umpqua Community Health Center, noted in July and August 2007 that Lillard had difficulty maintaining a stable mood and was possibly manic but recorded just two months later that Lillard was calmer and "not quite so high." *Id.* at 366-369. Finally, Dr. Bogart assigned the GAF score of 40 to Lillard in 2008. *Id.* at 389.

The ALJ's assessment of the physician opinions failed to consider the record as a whole. The ALJ's assessment of Lillard's mental limitations relied in part on the opinion of Dr. Henry, the state agency reviewing physician. *Id.* at 16. Dr. Henry, however, noted that it was "difficult to gauge the functional impact" of Lillard's mental health problems due to lack of treatment and probable continued alcohol and substance abuse. *Id.* at 307. The ALJ also noted that Dr. Villanueva found that Lillard's symptoms had improved but did not take into account Dr. Tabert's or Dr. Bogart's more recent observations of Lillard's mental health symptoms. *Id.* at 16. Moreover, although Lillard's fluctuating symptoms might be caused by medication, the ALJ did not explore that possibility. I therefore conclude that the ALJ erred when he relied on Dr. Henry's opinion as the basis for his residual functional capacity determination.

### III.   Lay Witness Testimony

"[L]ay witness testimony as to a claimant's symptoms or how an impairment affects ability to work *is* competent evidence." *Van Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996). Thus, an ALJ must consider lay witness testimony concerning a claimant's ability to work. *Id.* Moreover, if an ALJ disregards the testimony of a lay witness, the ALJ must provide

specific reasons that are germane to each witness. *Bruce v. Astrue*, 557 F.3d 1113, 1115 (9th Cir. 2009).

Here, Lillard argues that the ALJ improperly rejected the testimony of Alicia Loy-Steiner and Kelsi Chase. Loy-Steiner reported that Lillard suffered a monthly "down cycle where he just doesn't want to do anything," including get out of bed or get dressed. (Tr. at 155.) Chase reported that Lillard sometimes gets very depressed and sleeps all day and sometimes does not have the energy to shave or get out of bed. *Id.* at 190-191, 195. The ALJ found the reports credible but indicated that the "medical evidence does not suggest that the claimant's mental health altogether precludes full time work." *Id.* at 16.

Despite his finding that the lay witnesses' testimony was generally credible, the ALJ implicitly rejected their testimony. The ALJ's residual functional capacity determination did not include any limitations related to attendance. Moreover, the ALJ's rejection of this portion of the lay witness testimony relied on medical evidence that was inadequate, as discussed above. I therefore find that the ALJ's decision to reject the lay witness testimony was in error.

## IV.     Remand for Further Development of the Record

"The general rule is that when an administrative agency has abused its discretion or exceeded its statutory authority, a court should remand the matter to the agency for further consideration." *Moisa v. Barnhart*, 367 F.3d 882, 886-887 (9th Cir. 2004) (citation omitted). A remand for an award of benefits is appropriate, however, if: (1) the ALJ failed to provide legally sufficient reasons for rejecting the evidence; (2) no outstanding issues remain for the ALJ to resolve; and 3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited. *Benecke v. Barnhart*, 379 F.3d 587, 593 (9th Cir. 2004)

Page 15 - FINDINGS AND RECOMMENDATION

(citation omitted). Here, as noted above, the ALJ failed to provide legally sufficient reasons to reject Lillard's testimony that his mental impairments render him unable to work at least two to three days out of every month. Moreover, it is clear from the record that the ALJ would be required to award benefits if he credited Lillard's testimony. The vocational expert testified that Lillard could not maintain employment as a parking lot cashier or lens inspector if he repeatedly missed more than two days in a month during the probationary period of his employment. (Tr. 82.)

In one line of cases, the Ninth Circuit has indicated that a court will not remand solely to allow an ALJ to make specific findings regarding a claimant's improperly discredited testimony. *Varney v. Sec'y of Health & Human Servs.*, 859 F.2d 1396, 1401 (9th Cir. 1998); *see also Lester*, 81 F.3d at 834. In *Connett v. Barnhart*, however, the Ninth Circuit noted the credit-as-true doctrine is not mandatory, and courts have "some flexibility" in applying it if substantial questions remain as to the claimant's credibility. 340 F.3d 871, 876 (9th Cir. 2003). Moreover, in *Vasquez*, the Ninth Circuit noted but declined to resolve the conflict between *Varney* and *Lester* on the one hand and *Connett* on the other. 547 F.3d 1101, 1107 (9th Cir. 2008).

I find that outstanding issues remain regarding Lillard's testimony that his mental impairments would lead to monthly absences. No treating or examining physician has indicated whether Lillard's mental impairments can produce the cyclical symptoms he describes or whether Lillard's symptoms can be brought under control with proper medication. Moreover, the treating and examining physicians have not offered any opinion regarding Lillard's ability to sustain employment. Finally, since both Lillard and the lay witnesses indicated that Lillard suffered from cyclical symptoms, the ALJ must reassess the credibility of that testimony. The court

Page 16 - FINDINGS AND RECOMMENDATION

should therefore conclude that remand for further development of the record is appropriate.

On remand, the ALJ must elicit medical opinions regarding Lillard's ability to sustain employment over time. Specifically, the ALJ must inquire whether Lillard's mental impairments can produce the cyclical symptoms he describes, whether those symptoms would regularly lead to absences from work and whether proper medication can alleviate Lillard's symptoms to the extent that he could sustain employment. Upon receipt of the additional medical evidence, the ALJ must again assess the credibility of the claimant and the lay witness testimony in light of the new evidence.

## CONCLUSION

The Commissioner's decision should be reversed and remanded for further proceedings, for the reasons set forth above.

## SCHEDULING ORDER

The Findings and Recommendation will be referred to a district judge. Objections, if any, are due December 10, 2009. If no objections are filed, then the Findings and Recommendation will go under advisement on that date. If objections are filed, then a response is due within 10 days after being served with a copy of the objections. When the response is due or filed, whichever date is earlier, the Findings and Recommendation will go under advisement.

Dated this 24th day of November, 2009.

_____
Honorable Paul Papak
United States Magistrate Judge